2012 ND 145

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Trevor Lance MERTZ, Defendant and Appellant.**

No. 20120087.

Supreme Court of North Dakota.

July 12, 2012.

Bryan David Denham, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee; submitted on brief.

Kent M. Morrrow, Bismarck, ND, for defendant and appellant; submitted on brief.

CROTHERS, Justice.

[¶ 1] Trevor Mertz appeals a district court criminal judgment entered after a jury convicted him of burglary. Mertz argues that (1) after the jury retired for deliberation, the district court erred by providing an incorrect and misleading answer to the jury's request for instruction on the law and that (2) the evidence presented at trial was insufficient to support the conviction. We affirm.

I

[¶ 2] Mertz was charged with burglary for entering his ex-girlfriend's home and taking a television. Mertz was tried by a jury and testified at trial. Mertz admitted

to entering the residence and taking the television but claimed the television did not belong to his ex-girlfriend. Mertz testified the television was his and he loaned it to his ex-girlfriend for their child's use. Two witnesses called by the State testified the television belonged to Mertz's ex-girlfriend.

[¶ 3] After both sides rested, the jury received the following instructions on burglary:

## "BURGLARY

"A person is guilty of Burglary if with intent to commit a crime, that person willfully enters or secretly remains in a building or occupied structure, or a separately secured or occupied portion thereof, at a time the premises are not open to the public and the actor is not licensed, invited, or otherwise privileged to enter or remain, as the case may be.

## "ESSENTIAL ELEMENTS

"The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:

1) On or about June 12, 2011, in Burleigh [County], North Dakota, the Defendant, Trevor Mertz, willfully entered or secretly remained in a building or occupied structure or a separately secured or occupied portion of a building or occupied structure, namely, the home of [his ex-girlfriend];

2) The premises were not then open to the public;

3) The Defendant was not then licensed, invited, or otherwise privileged to enter or remain in the premises; and

4) The Defendant then and there intended to commit a crime in the premises."

The jury did not receive instructions on theft or any other crime.

[¶ 4] Before returning a verdict, the jury asked the district court:

"Can someone be convicted of Burglary if they break into someone else's home for the sole purpose of retrieving their own personal property? Yes or No?"

[¶ 5] After consulting with the State's attorney and Mertz's attorney in Mertz's presence, the district court responded:

"You received the jury instructions regarding the elements for burglary. If you find the State has proved those elements, then the verdict would be guilty; if you find they did not prove any of the elements, the verdict would be not guilty."

[¶ 6] The jury found Mertz guilty.

## II

[¶ 7] Mertz asserts the proper response to the jury's question was "No" and argues the district court erred by providing an erroneous and misleading response. The State responds the district court's response accurately informed the jury of the law.

[¶ 8] The only authority Mertz cites to support his argument is N.D.C.C. § 29-22-05, which provides:

"After the jurors have retired for deliberation, if they desire to be informed on a point of law arising in the cause, or to have any testimony about which they are in doubt or disagreement read to them, they, upon their request, must be conducted into the courtroom by the officer who has them in custody. Upon their being brought into court, the information required must be given in the

presence of, or after notice to, the state's attorney and the defendant or the defendant's counsel, or after they have been called."

Section 29–22–05, N.D.C.C., requires the district court to respond to specified jury requests and governs how the district court must communicate with jurors during deliberations. The district court followed all procedures required by the statute. Mertz's real claim is that the district court answered the jurors' question incorrectly because the court made a mistake of law on the elements of burglary. That claim in turn attacks the sufficiency of jury instructions to which Mertz did not object.

■ [¶ 9] "Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury." *State v. Olander,* 1998 ND 50, ¶ 18, 575 N.W.2d 658. "We review jury instructions as a whole and, if the instructions, as a whole, correctly advise the jury on the law, they are sufficient although part of the instructions, standing alone, may be insufficient or erroneous." *Id.* To preserve an issue concerning jury instructions for review, a defendant must request an instruction as required by N.D.R.Crim.P. 30(a) or object to an instruction as required by N.D.R.Crim.P. 30(c). N.D.R.Crim.P. 30(d)(1). When a defendant fails to properly request or object to an instruction, we may review the instructions for plain error affecting substantial rights. N.D.R.Crim.P. 30(d)(2). Because Mertz did not object to the jury instructions or request a supplemental instruction on the elements of burglary, we review for plain error.

[¶ 10] Mertz was charged with burglary under N.D.C.C. § 12.1–22–02(1), which provides:

"A person is guilty of burglary if he willfully enters or surreptitiously remains in a building or occupied structure, or a separately secured or occupied portion thereof, when at the time the premises are not open to the public and the actor is not licensed, invited, or otherwise privileged to enter or remain as the case may be, with intent to commit a crime therein."

Mertz argues that to prove "intent to commit a crime therein," the State was required to show Mertz entered the residence with intent to commit the specific crime of theft. Mertz argues he could not be convicted of burglary if he entered the residence to retrieve his own television because the definition of theft requires a person "[k]nowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, *the property of another* with intent to deprive the owner thereof[.]" N.D.C.C. § 12.1–23–02(1) (emphasis added).

■ [¶ 11] Whether the specific crime intended to be committed is an element of burglary that must be included in the jury instructions is an issue of first impression in North Dakota. Statutory interpretation is a question of law and is fully reviewable on appeal. *State v. Beciraj,* 2003 ND 173, ¶ 14, 671 N.W.2d 250. "When a statute's language is ambiguous or of doubtful meaning, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain the legislature's intent." *Id.* (quotation omitted).

■ [¶ 12] Section 12.1–22–02(1), N.D.C.C., is unclear on its face whether the "intent to commit a crime" language requires identification and proof of the intended crime as an element in a burglary prosecution. The North Dakota Criminal Code, N.D.C.C. tit. 12.1, is modeled after the proposed Federal Criminal Code, and we may look to the drafter's official comments and the relevant legislative history

to aid in interpretation of our corresponding criminal provisions. *Beciraj*, 2003 ND 173, ¶ 15, 671 N.W.2d 250.

[¶ 13] Section 12.1–22–02(1), N.D.C.C., is substantively the same as Section 1711(1) of the proposed Federal Criminal Code. The Comment to Section 1711 explains the specific crime intended to be committed is not an element of burglary:

> "As in the common law the crime intended to be committed is not specified. This avoids the necessity of proving the precise crime intended—theft, rape, robbery, kidnapping—by a person who criminally enters premises when people are likely to be encountered. In addition unlawful intrusion in itself engenders fear. Of course, the crime intended to be committed does not include unlawful entry or presence crimes, such as criminal trespass or stowing away."

*Final Report of the National Commission on Reform of Federal Criminal Laws* 200 (1971). Further, in discussing the need for distinct attempt and burglary offenses, the *Working Papers* explain burglary is the proper charge when an actor's intent was unclear:

> "[T]he fact of entry into another's private premises for the purpose of committing a crime constitutes serious criminal conduct in itself. Any such entry, to begin with, displays a degree of deliberation and commitment to criminal action on the part of the culprit which presents a terrorizing aspect to any person properly within the premises. It is, in itself, an invasion of secured property and privacy. Further, it may not be clear, at the time of the culprit's entry, exactly what crime he intends to commit inside, though there may be ample evidence manifesting an intent to commit some crime. For example, an opponent in a business or labor dispute, found surreptitiously entering his rival's property, may be there to commit theft, malicious mischief or assault. A person breaking into a Post Office, armed with weapons and explosives, is probably there to 'crack open' a safe, though he may be there to commit arson and destroy the surrounding property. The proper charge, in these cases, would simply be burglary."

*II Working Papers of the National Commission on Reform of Federal Criminal Laws* 892–93 (1970) (footnote omitted).

[¶ 14] Based on the drafter's commentaries, we conclude the specific crime intended to be committed in the premises is not an element of burglary. Therefore, the jury instruction stating the State was required to prove Mertz "then and there intended to commit a crime in the premises" correctly informed the jury of the applicable law. The district court did not err by referring the jury to the jury instructions in its response to the jury question.

### III

[¶ 15] Mertz argues the jury verdict was not supported by sufficient evidence because the State failed to prove beyond a reasonable doubt that the television was "the property of another." As in the first issue, Mertz's argument rests on the assumption that the specific crime intended to be committed is an element of burglary. As explained above, that assumption is incorrect. Contrary to Mertz's assertion the State was required to show he entered the residence with intent to commit theft, the State's burden was to prove Mertz entered the residence "with intent to commit a crime therein."

[¶ 16] Our review of a challenge to the sufficiency of the evidence supporting a jury verdict is very limited:

> "[T]his Court merely reviews the record to determine if there is competent evi-

dence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses.... A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty."

*State v. Buckley*, 2010 ND 248, ¶ 7, 792 N.W.2d 518 (quotation omitted).

[¶ 17] At trial, the State called Mertz's ex-girlfriend and her roommate as witnesses. The roommate testified he was inside when Mertz entered the residence. He testified Mertz kicked in the door causing it to crack down the middle, entered the residence and took the television. Mertz's ex-girlfriend was not present when Mertz took the television, but she testified the door to the residence was damaged the day the television was taken. She testified the door was not damaged when she left the residence and the door was cracked and the deadbolt was broken when she returned. Mertz testified he forced his way inside and he did not have permission to enter the residence:

"Q. What happened when you got to the house?

"A. I walked up to the door and was— I knocked and nobody answered. And the door was pretty flimsy and I forced my way in somewhat.

"Q. Did it appear to be locked?

"A. I think so, but it was pretty weak for the most part.

. . . .

"Q. At the time that you went into the house, did you believe you had a privi-lege to be there, or permission to be there?

"A. Not so much, no."

Mertz testified he entered the residence and took the television. A reasonable jury could have found Mertz entered the residence with intent to commit a crime therein based on this evidence.

IV

[¶ 18] We affirm the district court's criminal judgment.

[¶ 19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 20] I do not believe the statute is ambiguous. The interpretation reached by the majority is the result yielded by the plain meaning of the words. The legislative history certainly confirms it.

[¶ 21] Dale V. Sandstrom